**374 A.2d 802.**

## PETITION OF RHODE ISLAND BAR ASSOCIATION.

JUNE 24, 1977.

PRESENT: Bevilacqua, C. J., Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This case comes before us on petition of the Rhode Island Bar Association (the association) to suspend the respondent, Aram K. Berberian (Berberian), for nonpayment of the $65 association dues for the period October 1, 1975, through September 30, 1976. Berberian has challenged the Unification Order of June 28, 1973,[1] twice before. He first brought suit in the United States District Court, which dismissed the complaint, and the First Circuit affirmed. Thereafter, Berberian refused to pay his 1974 association dues. The association petitioned to suspend him, and we ordered him suspended if he did not pay. *Petition of Rhode Island Bar Ass'n*, 115 R.I. 901, 339 A.2d 277 (1975). He paid. Now, once again he has refused to pay and challenges the validity of the Unification Order. The ultimate issue remains the same: Can the association require Berberian to pay $65 per year? And the ultimate answer remains the same: Yes.

Berberian's theories are fourfold. First, he contends that the association is a state agency within the meaning of the Administrative Procedures Act (APA) and that proper procedures were not followed in the assessment of dues. Secondly, he maintains that the dues are an unconstitutional tax. His third claim is that the unification of the Rhode Island Bar is in violation of the Sherman Anti-Trust Act, and, finally, he asserts that by being adjudged bankrupt on June 16, 1976, and having his debts discharged, his "debt" to the association was likewise discharged and he does not now have to pay.

---

[1] This court granted the petition unifying the Rhode Island Bar Association effective October 1, 1973. *Petition of the Rhode Island Bar Ass'n*, 111 R.I. 936, 306 A.2d 199 (1973).

Berberian's contention that the association is an agency subject to the APA is meritless to the point of being frivolous. General Laws 1956 (1969 Reenactment) §42-35-1(a) defines "agency" for the purposes of the Act as a "state board, commission, department, or officer, other than the legislature or the courts, authorized by law to make rules or to determine contested cases." It is obvious that the agency described by the APA is a governmental entity, apart from the judicial or legislative branches,[2] which is created by statute, executive order, or the Constitution and which can affect the rights of private parties either through adjudication or rulemaking. *See* 1 Davis, *Administrative Law* §1.01 at 1-4 (1958 ed.). Although the association can regulate its internal affairs to some extent, it is not empowered to determine contested cases or to make rules affecting the rights and obligations of its members without this court's approval. Therefore, it is not an agency within the meaning of §42-35-1(a).

Equally without merit is Berberian's second contention, that the $65 fee is an unconstitutional tax. The required dues are not a tax designed to raise revenue, but a licensing fee. *Petition of Florida State Bar Ass'n,* 40 So.2d 902, 906 (Fla. 1949); *Lathrop v. Donohue,* 10 Wis. 2d 230, 102 N.W.2d 404 (1960). As one court has noted, the membership fee is an "exaction for regulation only" without which the integrated bar program would be impossible. *Petition of Florida State Bar Ass'n, supra* at 906-07. We concur with the view that the requirement that any-

---

[2]In *Babineaux v. Judiciary Comm'n,* 341 So.2d 396 (La. 1976), the court was reviewing a challenge to actions taken by Louisiana's Judiciary Commission. The commission is established by the state's Constitution, and its functions are substantially similar to those exercised by Rhode Island's Commission on Judicial Tenure and Discipline. The court, in rejecting the contention that the commission was bound by the provisions of the Administrative Procedures Act, ruled that the term "court" in the definitional portion of the Act means the judicial branch of state government.

492

one admitted to practice law in the state be a member of the unified bar and pay dues thereto constitutes proper regulation of those engaged in the practice of law. *In re Unification of the New Hampshire Bar,* 109 N.H. 260, 248 A.2d 709 (1968).

Berberian's third argument is that the Unification Order violates the Sherman Anti-Trust Act. Essentially, the argument is as follows: *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975), established that the practice of law is commerce that can affect interstate commerce and in fact Berberian engages in the practice of law outside this state; the Unification Order established an Elizabethan guild; and the establishment of this "guild," coupled with the obligation to pay dues, violates the Sherman Anti-Trust Act. The argument is without merit. *Goldfarb,* while recognizing the potential interstate commercial effects of price-fixing, is not on point here. The $65 association fee is hardly price-fixing of services. The compulsory aspect of paying one's annual dues to the Bar Association in no way comes close to promoting those anti-competitive practices which prompted the 1890 enactment of the Sherman Anti-Trust Act. Each member of the association is still free to express his or her view on the various positions taken by the association's leadership even though such views may be diametrically opposed to those of the leadership or a majority of the membership. While Shakespeare had much to say on the subject of lawyers,[3] we doubt that even he would endorse the postulate that a unified bar is tantamount to an Elizabethan guild. *See In re Unification of the New Hampshire Bar, supra.* Therefore, we must reject the con-

---

[3] "The first thing we do, let's kill all the lawyers." Henry VI, part II, IV, ii, 86; "Why may not that be the skull of a lawyer? Where be his quiddities now, his quillets, his cases, his tenures, and his tricks?" Hamlet, V, i, 104.

tention that the dues requirement violates the Sherman Anti-Trust Act.

Finally, Berberian urges that because his "debt" of $65 was discharged in bankruptcy on June 16, 1976, he does not have to pay his dues and any attempt to collect them flies in the face of the supremacy clause. In support of this position he cites *Perez* v. *Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971). The issue there was whether the state had power to legislate that a discharge in bankruptcy of an automobile accident tort judgment shall have no effect on the judgment debtor's obligation to pay, at least insofar as such repayment can be enforced by the state's withholding of driving privileges. The court found that this provision violated the supremacy clause. That case is unpersuasive on the question before us. We are not dealing here with a debt in the classic sense, one which arises once and can be finally discharged. The dues owed the association are a continuing obligation. They are a fee exacted for the privilege of practicing law in this state. Indeed, an analogy more on point than the *Perez* situation is the state fee required to obtain a driver's license. If a person obtained a license with a check which subsequently bounced, the person would owe the state the requisite amount. And if that "debt" were listed and discharged through bankruptcy, the individual would still have to pay the fee to get a valid license, discharge or not. Thus, Berberian's argument on this point has no merit.

The respondent having failed to show cause why he should not be suspended, it is hereby ordered that the motion of the Rhode Island Bar Association that Aram K. Berberian be suspended from membership and the practice of law for failure to comply with the bylaws of the association, in that he failed to pay his dues, be

494

granted, unless said Aram K. Berberian shall pay said dues within 15 days after the filing of this opinion.

Mr. Justice Paolino did not participate.

*Daniel J. Murray, Richard A. Licht,* for petitioner.

*Samuel A. Olevson,* for respondent.