

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

July 16, 1992

Honorable Merrill L. Hartman          Opinion No. DM-142
Chairman
Court Reporters Certification Board   Re:  Whether the Court Reporters Certifica-
P. O. Box 13131                       tion Board is subject to article 6252-13f,
Austin, Texas 78711-3131              V.T.C.S., which establishes the State Office of
                                      Administrative Hearings   (RQ-138)

Dear Judge Hartman:

In 1991, the legislature created the State Office of Administrative Hearings ("the office") by enacting into law Senate Bill 884. Acts 1991, 72d Leg., ch. 591, at 2127-28. Senate Bill 884 has been codified as article 6252-13f, V.T.C.S. Section 2(b) of article 6252-13f provides that the office

> shall conduct all administrative hearings in contested cases under the Administrative Procedure and Texas Register Act (Article 6252-13a, Vernon's Texas Civil Statutes) that are before an agency that does not employ a person whose only duty is to preside as a hearings officer over matters related to contested cases before the agency.

*See also* V.T.C.S. art. 6252-13a, § 3(2) (definition of "contested case"). Article 6252-13f applies only to state agencies. V.T.C.S. art. 6252-13f, § 3(a). Section 1(3) of that article defines "state agency" as "a state board, commission, department, or other agency that is subject to the Administrative Procedure and Texas Register Act."

You ask whether article 6252-13f applies to the Court Reporters Certification Board ("the board"). We conclude that the board is not subject to the

Administrative Procedure and Texas Register Act ("APTRA" or "the act"), and consequently, that article 6252-13f does not apply to the board.[1]

By its terms, article 6252-13f applies only to a state agency that is subject to APTRA and that does not employ a person whose only duty is to conduct administrative hearings in contested cases before the agency. We are advised that the board does not employ such a person, and that instead, the chairman of the board or his designee preside at all disciplinary hearings before the board in accordance with chapter 52 of the Government Code, which establishes the board and defines its powers and duties.[2] One of the two requirements for application of article 6252-13f to a state agency is thus satisfied. To determine if the other requirement, that the board be subject to APTRA, is met, we must examine the language and legislative history of APTRA and relevant case law.

APTRA applies only to state agencies. *See* V.T.C.S. art. 6252-13a, §§ 4(a), 4A, 5(a). While certain personnel practices of all state agencies and certain functions of some state agencies are specifically exempted in section 21 of the act, no provision of the act specifically exempts the board as a whole or the hearing activities of the board from APTRA. *See id.* § 21.

---

[1]The legislative history of Senate Bill 884 does not resolve your question. The testimony before the legislature and the bill analyses document only the legislature's intent to conserve state funds by providing a pool of qualified examiners for agencies who previously may have contracted for the services of hearings examiners and the legislature's desire to insure the independence of hearings examiners by having a separate state agency employ their services. *See, e.g.,* Public Hearing on S.B. 884, Senate Comm. on State Affairs (April 8, 1991); fiscal notes and House and Senate committee bill analyses, S.B. 884, Bill File; House Research Organization Bill Analysis at 74-76 (May 23, 1991).

[2]The chairman and other board members have various statutory duties, including the duty to determine the eligibility of persons applying for certification to engage in shorthand reporting in this state. Gov't Code §§ 52.013, 52.021-.024; *see also* § 52.011(i) (members receive no compensation, only reimbursement of expenses). Certifications are issued by the supreme court on the board's recommendation. *Id.* §§ 52.001(2), 52.021. After issuance, the board may revoke or suspend a reporter's certification or reprimand the reporter for certain conduct. *Id.* §§ 52.029(a)-(b). Disciplinary action may be taken only after notice and an opportunity for a hearing is provided the reporter. *Id.* § 52.029(a). Appeal of a disciplinary action is by trial *de novo* in the county of the reporter's residence. *Id.* § 52.030. By statute, the chairman or his designee must preside at disciplinary hearings that the board conducts. *Id.* § 52.028(c). The statute also requires an "active district judge" to serve as the chairman. *Id.* § 52.011(a)(1).

Section 3(1) of APTRA, however, excludes "the courts" from the definition of "agency" for purposes of the act.[3] Since the act does not define that phrase, we turn to its legislative history. APTRA was enacted in 1975 on adoption of Senate Bill 41. Acts 1975, 64th Leg., ch. 61. The definition of "agency" in section 3(1) of Senate Bill 41 contained the exclusion for "the courts" that appears in the current law. *Id.* § 3(1), at 137. The legislative history of Senate Bill 41, however, does not elucidate the scope of the exclusion. *See* Testimony before the Senate Comm. on Intergovernmental Relations (January 30, 1975) and the House Comm. on Judicial Affairs (March 19, 1975); *see also* that House committee's bill analysis, S.B. 41, Bill File; House Comm. on the Judiciary, *An Administrative Procedure Act for Texas* (1974).

Senate Bill 41 was based on the Model State Administrative Procedure Act adopted in 1961 by the National Conference of Commissioners on Uniform State Laws ("the commissioners"). McCalla, *Proposed Administrative Procedure Act*, 37 TEX. B.J. 1163 (1974); *see also* 15 UNIFORM LAWS ANNOTATED 147 (1990) (includes copy of 1961 model act) (hereinafter "U.L.A."). Section (1)(1) of the 1961 model act defines "agency" to include "each state board, commission, department or officer, other than the legislature or *the courts*, authorized by law to make rules or determine contested cases." 15 U.L.A. at 147 (brackets deleted and emphasis added). The 1961 model act, like the Texas act, contains no definition of the phrase "the courts."

The 1961 act was the second model administrative act adopted by the commissioners. The first model administrative procedure act was adopted in 1946. *See generally* 9C U.L.A. 174 (1957) (includes copy of 1946 model act). The 1946 act defines "agency" as "any state board, commission, department, or officer authorized by law to make rules or adjudicate contested cases, except those in *the legislative or*

---

[3]Section 3(1) of APTRA currently defines "agency" as

any state board, commission, department, or officer having statewide jurisdiction, other than an agency wholly financed by federal funds, the legislature, the courts, the Texas Workers' Compensation Commission, and institutions of higher education, that makes rules or determines contested cases.

V.T.C.S. art. 6252-13a, § 3(1).

*judicial branches."* 9C U.L.A. at 179 (brackets deleted and emphasis added).[4] The commissioners' comments accompanying the 1946 and 1961 acts do not elaborate on the meaning of the respective phrases. 9C U.L.A. at 174-78 (1946 act); 15 U.L.A. at 148-49 (1961 act). Nor do the comments to the 1961 act explain the reason for the change in language. 15 U.L.A. at 148-49.

The third and most recent model administrative procedure act was adopted in 1981. 15 U.L.A. 1. Section 1-102 of the 1981 act defines "agency," and like the 1961 act, excludes "the courts." 15 U.L.A. at 10-11. The commissioners' comments to section 1-102 state in part:

> The 1961 Revised Model Act also excluded, as does this definition, the legislature and the courts. Note that it is only *'the* legislature' and *'the* courts' that are excluded, and not 'the legislative branch' and 'the judicial branch,' and that exemptions from the Act are to be construed narrowly. [Emphasis in original.]

15 U.L.A. at 12.[5] We found no indication in the legislative history of the Texas act that the Texas legislature was aware of or intended the narrower meaning of the phrase "the courts." *See* page 3 *supra.* Nor did we find any mention of a narrower meaning for the phrase in the commentary about the Texas act published soon after its enactment. *See, e.g.,* McCalla, *The Administrative Procedure and Texas Register Act,* 28 BAYLOR L. REV. 445 (1976); State Bar of Texas, *Workshop Guide for the New Administrative Procedure and Texas Register Act* (1975); *see also* F. E. Cooper, 1 *State Administrative Law* 97-107 (1965) (stating in discussion on 1961 model act

---

[4]Language similar to the quoted definition was used in the definition of "agency" in article 6252-13, a statute that addressed generally the authority of state agencies to promulgate rules. That statute was repealed by section 22 of Senate Bill 41, the bill that enacted APTRA. Acts 1975, 64th Leg., ch. 61, § 22, at 148; for prior law *see* Acts 1961, 57th Leg., ch. 274, at 581, as amended by Acts 1962, 57th Leg., 3d C.S., ch. 31, § 1, at 90 ("agency" means "any state board ... except those in the legislative or judicial branches"). State cases construing article 6252-13 do not address issues pertinent to your question.

[5]As support for this explanation, the comments reference only a 1975 article on the Iowa administrative procedure act by Earl Bonfield. *See* Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process,* 60 IOWA L.REV. 731, 763-64 (1975). The author, however, in that article does not delineate the scope of the phrase "the courts," but only states various reasons for excluding "the courts" from the Iowa act, including reasons such as the availability of alternative procedural safeguards in the courts, that would support a narrower meaning of the phrase.

definitions that "agency" was purposefully drafted in general terms to accommodate varying state needs).

In contrast to the narrow meaning of the phrase "the courts" suggested by the change in the model act definition of "agency" and the comments to the 1981 model act, a number of other states' judicial decisions have construed the phrase "the courts" more expansively.[6]  For instance, the supreme courts of Rhode Island and Louisiana have construed the phrase to mean the judicial branch of government.[7]  The Rhode Island court in two different decisions has held that the Rhode Island administrative procedure act does not apply to either the state bar association or the Disciplinary Board of the Rhode Island Supreme Court.  *See Berberian v. Disciplinary Bd. of Rhode Island Supreme Court*, 427 A.2d 1332 (R.I. 1981); *Petition of Rhode Island Bar Association*, 374 A.2d 802 (R.I. 1977).  The court in *Berberian* described the disciplinary board as an agency of the court and cited its earlier decision for the proposition that the administrative procedure act was not applicable to the judicial branch of government.  In its earlier decision, the Rhode Island court had referred to the definition of "agency" in the state act, which like the Texas act, excludes "the courts," and had stated "[i]t is obvious that the agency described by the APA is a governmental entity apart from the judicial or legislative branches."  *Id.* at 803 (also noting inability of bar association to decide contested cases or make rules without court approval).

In support of its holding in *Petition of Rhode Island Bar Association*, the Rhode Island court cited the decision of the Louisiana Supreme Court in *Babineaux v. Judiciary Comm'n*, 341 So.2d 396 (La. 1976).  One of the issues in *Babineaux*

---

[6]We are aware of only one state court decision that could be read to suggest a narrow application of the exclusion for "the courts."  That case is *In re McDonald's Petition*, 171 N.E.2d 691 (Ind. 1961).  In its 1961 decision, the Indiana Supreme Court held that the standard of review to be applied to the administrative actions of the State Board of Law Examiners was the standard generally applied to actions of administrative agencies.  The court therein noted its power to appoint the members of the board, but stated it saw no reason why a different standard should be applied to the administrative function of the board. *Id.* at 693.  The court did not refer to the state administrative procedure act in its decision, even though the act at the time of the decision excluded "the courts."

[7]Two federal courts have similarly construed the exclusion in the Federal Administrative Procedure Act for "courts of the United States."  *In re Fidelity Mortgage Investors v. Administrative Office of the U.S. Courts*, 690 F.2d 35 (2d Cir. 1982) (holding the federal act inapplicable to the Judicial Conference and referring to the legislative history establishing congressional intent to except entire judicial branch), *cert. denied*, 462 U.S. 1106 (1983); *Tashima v. Administrative Office of the U.S. Courts*, 719 F.Supp. 881 (C.D. Cal. 1989) (holding federal act inapplicable to the Administrative Office given analysis in the 1982 appellate decision and the district court's independent review of the legislative history).

concerned the adequacy of the procedures before the Judiciary Commission in a hearing held to determine the applicability of a particular judicial canon to ten state judges. The state supreme court in *Babineaux* construed the exclusion for "the courts" in the Louisiana administrative procedure act to mean the judicial branch of state government and held therefore that the act did not apply to the Judiciary Commission, an entity it described as "an independent, disciplinary body within the judiciary branch." *Id.* at 401.

The Supreme Court of Connecticut has not as clearly defined the scope of the phrase "the courts" in the Connecticut administrative procedure act. In one case, the court held the Connecticut act did not apply to a statewide committee required by statute to review complaints concerning attorney misconduct. *Sobocinski v. Statewide Grievance Comm.*, 576 A.2d 532 (Conn. 1990). The Connecticut court held the act inapplicable to the committee, and in so doing, referred to the exclusion for "the courts" in the act. It did not, however, expressly equate the phrase with the entire judicial branch. Instead, the court discussed the inherent authority of the courts over court officers such as attorneys, and described the statewide committee as a supervisory arm of the court. *Id.* at 535-36. Thus, the decision leaves open the possibility that only certain disciplinary entities within the judicial branch would be part of "the courts" for purposes of the Connecticut act.[8]

The Texas Supreme Court has not expressly equated the exclusion in APTRA for "the courts" with entities within the judicial branch of government as have the Rhode Island and Louisiana Supreme Courts. Nor has the Texas court expressly stated that disciplinary entities within the judicial branch are covered by the exclusion. In *Cameron v. Greenhill*, 582 S.W.2d 775 (Tex. 1979), the Texas court held only that the exclusion for "the courts" excepts from APTRA the administrative activities of the court. The petitioner in *Cameron* had challenged in district court an order of the supreme court assessing a one-time fee against members of the State Bar of Texas on the basis that the order was not in compliance with APTRA. The court's order had been issued in accordance with the provisions of the State Bar Act. *See* Gov't Code §§ 81.024, 81.054 (rulemaking procedures followed in assessing fees

---

[8]*See also Mendicino v. Whitchurch*, 565 P.2d 460 (Wyo. 1977) (without discussing exclusion for "the judiciary" in the state administrative procedure act, court held act inapplicable to the disbarment proceedings of the state bar's grievance committee; court relied instead on its inherent powers to supervise and discipline attorneys, officers of the courts, pursuant to the court's rules establishing grievance committee proceedings); *Scullion v. Michigan St. Bd. of Law Examiners*, 302 N.W.2d 290 (Mich. Ct. App. 1981) (state examiners board exempted from state administrative act by exclusion for "agency in the legislative or judicial branches;" board under control of judicial and not executive branch since board members nominated by the state supreme court and its rules subject to the court's approval).

against bar members).[9] In response to the petitioner's argument, the supreme court stated the decision of the Austin appeals court correctly determined "that provisions of the Administrative Procedure Act do not apply to the acts of this Court." *Cameron*, 582 S.W.2d at 777. The Austin appeals court had relied on the unqualified exemption of "the courts" in APTRA to conclude that "the courts are entirely exempt from the Act, regardless of the capacity [administrative or judicial] in which they act." *Cameron v. Greenhill*, 577 S.W.2d 389 (Tex. Civ. App.--Austin 1979).[10]

The Texas Supreme Court also addressed the application of APTRA to judges in *Lindsay v. Sterling*, 690 S.W.2d 560 (Tex. 1985). In *Lindsay*, the court determined that the actions of a county judge denying a wine and beer license pursuant to chapter 61 of the Alcoholic Beverage Code would be reviewed in the courts in accordance with the substantial evidence requirements of APTRA. While the supreme court therein described the county judge's actions pursuant to chapter 61 as ones "taken in an administrative, rather than a judicial capacity," the decision turned more on the role of the judge as part of the review process of the Alcoholic Beverage Commission, a state agency generally subject to APTRA. *See Lindsay*, 690 S.W.2d at 562-63 (referring to code provisions providing appeal from judge's decision was against commission alone); *see also* Alco. Bev. Code §§ 5.31, 5.43, 11.62 - .67 (describing powers to make rules and decide contested cases); V.T.C.S. art. 6252-13a, § 21(h) (specific exemption for appeal under Alcoholic Beverage Code § 32.18 from § 19(b)(1) of APTRA).[11]

---

[9]Section 81.011 of chapter 81 of the Government Code describes the state bar as an administrative agency of the judicial department, states that the chapter's provisions are in aid of the judicial department's powers to regulate the practice of law, and provides that the Texas Supreme Court is to exercise administrative control over the state bar on that department's behalf. Chapter 81 is part of subtitle G, title 2 of the Government Code. Title 2 of the code is entitled the "Judicial Branch."

[10]In Open Records Decision No. 527 (1989), this office held that the Court Reporters Certification Board was not part of "the Judiciary" for purposes of the Open Records Act, and thus, was subject to the act. *See* V.T.C.S. art. 6252-17a, § 2(1)(G). That decision, as well as the judicial decision on which it relied -- *Benavides v. Lee*, 665 S.W.2d 151 (Tex. App.--San Antonio 1983, no writ) -- focused solely on the administrative nature of the activities in issue to determine if the governmental body was excepted as part of "the Judiciary" from the act's disclosure requirements. Given the rejection of that approach in *Cameron*, those Open Records Act decisions do not assist us here.

[11]The legislature subsequently has amended chapter 61 to permit the county judges in certain instances to appoint masters or to delegate to other county officers the duty to conduct hearings under that chapter. Alco. Bev. Code §§ 61.311 - .312 (sections added in 1987 and 1989).

Neither *Cameron* nor *Lindsay* resolves your question. On the basis of those decisions, we can state with certainty only that APTRA will not apply to the administrative activities of a court acting solely as a court, but will apply to the activities if the court undertakes them on behalf of and as part of an agency within the executive branch. Neither *Cameron* nor *Lindsay* establishes that the phrase "the courts" means the entire judicial branch or includes along with the courts themselves the disciplinary entities within that branch.[12] Nor do we read those decisions as precluding either construction of the phrase.

We demonstrate below that the board is an entity within the judicial branch that engages in disciplinary activities on behalf of the judiciary. Consequently, the issue here is whether APTRA applies to such activities. Since no Texas court has addressed that issue, we must decide if a Texas court faced with the issue here, would follow the lead of the state and federal courts that have broadly construed the exclusion for "the courts." We believe that the court would do so.

We now turn to the history of the statutory provisions in chapter 52 of the Government Code authorizing regulation of court reporters since that history documents the status of the board as a disciplinary arm of the courts. In 1975, the legislature enacted into a law a provision providing that the Texas Supreme Court, under its rulemaking authority, "provide for the duties and fees of court reporters in all civil judicial proceedings." Acts 1975, 64th Leg., ch. 319, § 1, at 826 (now codified as Gov't Code § 52.046). Apparently, the provision enacted in 1975 did not resolve the problem the courts were having in obtaining timely records for appeals from lower courts, and the following session, the legislature adopted Senate Bill 586,

---

[12]The supreme court in *Lindsay* does not even refer to the *Cameron* case or to the exclusion for "the courts" in APTRA. The Texas appellate decisions concerning the application of APTRA to grievance committees neither help us apply the two supreme court decisions, nor more clearly define the scope of the exclusion for "the courts" in APTRA. *Minnick v. State Bar of Texas*, 790 S.W.2d 87 (Tex. App.--Austin 1990, writ denied); *Green v. State*, 589 S.W.2d 160 (Tex. Civ. App.--Tyler 1979, no writ); *Wilson v. State*, 582 S.W.2d 484 (Tex. Civ. App.--Beaumont 1979, no writ). All three decisions emphasize the inability of grievance committees to make rules or determine contested cases. While the Austin court in *Minnick*, described the committees as "agencies of the judicial branch," and the Beaumont court in *Wilson*, referred to the decisions of the Rhode Island and Louisiana Supreme Courts in *Petition of Rhode Island Bar Association* and *Babineaux*, we do not rely on those references here because of their brevity and the clear importance of other factors in those appellate decisions. *Minnick*, 790 S.W.2d at 90; *Wilson*, 582 S.W.2d at 487; *see also* Gov't Code §§ 81.073-.075 prior to their repeal by Acts 1991, 72d Leg., ch. 795, § 30 (grievance committee procedures in effect at time of decisions); *id.* §§ 81.072 as amended by section 20 of chapter 795, which requires the supreme court to establish an administrative system for attorney and disability decisions; 81.073, as amended by section 21 of chapter 795, which establishes the Commission for Lawyer Discipline as a standing committee of the Texas State Bar.

which established the Texas Court Reporters Committee. Acts 1977, 65th Leg., ch. 438, at 1155 (codified first as V.T.C.S. article 2324b); Public Hearing, Senate Comm. on Juris. (testimony of Senator Schwartz) (March 8, 1977). The committee members, who were to be appointed by the supreme court, were authorized by the new law to examine applicants for court reporter certifications, certify to the supreme court applicants who were qualified, and revoke certifications of certified reporters who had engaged in prohibited conduct. Acts 1977, 65th Leg., ch. 438, §§ 12, 13, at 1156-58 (now codified as Gov't Code §§ 52.013(a)-(b), 52.023-.024, 52.027-.30, at 1156-58. In addition, section 9 of the new law provided the committee "was charged with the executive functions necessary to effectuate" the purposes of the act, while sections 12(f) and 13(e) provided that rules not inconsistent with the committee's examination and disciplinary powers "may be promulgated by the supreme court." *Id.* (now codified as Gov't Code §§ 52.002, 52.013(d)).

Justice Jack Pope, then a member of the Texas Supreme Court, testified at the senate committee hearing on March 8, 1977, about the need to regulate the profession of shorthand reporting, and to enact Senate Bill 586 and bring "the court reporting profession into the judiciary of Texas." *See also* Testimony of Senator Schwartz during debate on Second Reading in the Senate, March 17, 1977 (bill sets up within the supreme court the capacity to issue certifications); Testimony of Representative Powers during debate on Second Reading in the House, May 19, 1977 (bill creates a committee under the supervision and direction of the supreme court, which would have control of the committee). Justice Pope also described the new law "as the additional pieces of legislation that we [the court] felt were necessary to implement" regulatory control by the court. This comment may refer to the provisions in the new law investing the board with supervisory powers over anyone practicing as a shorthand reporter in the state courts, including the powers to issue certifications to shorthand reporters and to revoke the certification of any shorthand reporter engaged in prohibited conduct. Such powers generally are considered to be within the domain of licensing boards in the executive branch.[13]

---

[13]Since the early 1900s, Texas statutes have authorized certain courts to appoint official court reporters, made those reporters officers of the courts, and required them to take the oath required of officers by the constitution. Tex. Rev. Civ. Stat. arts. 1920-1922 (1911); *see* Gov't Code §§ 52.041, 52.045 (similar provisions in current law); *see also* Tex. Const. art. XVI, § 1. Article 1921, one of those early statutes, provided a method for examination and certification of official reporters. *Id.* art. 1921. Pursuant to that article, prior to appointment as an official reporter, a person was to be examined by a committee of three members of the state bar who were to be selected by the appointing judge. Upon successful passage of the examination by an examinee, a majority of the committee was to issue the examinee a certificate which was to be filed with the records of the court. Article 1923, another 1911 statute, provided in certain circumstances for the removal of a reporter from his official position by a committee of three attorneys appointed by the court. The 1911 statutes also authorized the

The legislature amended the 1977 law in 1983 by enacting Senate Bill 565. Acts 1983, 68th Leg., ch. 541, at 3139. According to the available legislative history, the name of the committee was changed to the Court Reporters Certification Board to indicate that it was a state entity, and not a private association for court reporters. House Study Group Bill Analysis to Senate Bill 565 (April 27, 1983), at 2; Testimony of Senator Washington during second reading of the bill (March 29, 1983). That history also indicates that no substantive change was intended with regard to the jurisdiction of the Texas Supreme Court over the board.[14] Testimony of Senator Washington and C. Raymond Judice, then executive director of the board, Public Hearing on S.B. 565, Senate Comm. on Jurisprudence (March 1, 1983). The amended article subsequently was codified as part of chapter 52 of the Government Code.

---

(footnote continued)

appointment of competent stenographers in the district and county courts, but provided no procedure for judicial determination of competency. Tex. Rev. Civ. Stat. arts. 1930-33 (1911).

The 1911 provisions concerning court reporters were part of title 37 of the Texas statutes, a title addressing practice in the state district and county courts. They later became part of title 42 of the 1925 statutes, a title also focusing on practice in the district and county courts. Tex. Rev. Civ. Stat. art. 2371-72 (1927). As subsequently amended, those provisions were codified as part of chapter 52. Chapter 52 is a part of subtitle D of title 2 of the current statutes. Subtitle D is entitled "Judicial Personnel and Officials," while title 2 is entitled the "Judicial Branch." Appropriations by the legislature to the board also appear in title IV of the appropriations act, the title devoted to the judiciary. See, e.g., Tex. H.B. 1, 72d Leg., 1st C.S., ch. 19, at 957.

[14]Section 9 of Senate Bill 565 added section 16A to article 2324b, which provided that the supreme court "may promulgate rules, not inconsistent with this Act, governing the certification and conduct of court reporters and persons who engage in the practice of shorthand reporting." Acts 1983, 68th Leg., ch. 541, § 9, at 3168; see Gov't Code § 52.002 (current law). The supreme court's current rules contain detailed provisions for the examination, certification, and disciplinary activities of the board, including provisions addressing the procedures to follow during disciplinary hearings. The bill analysis accompanying Senate Bill 565 explains a rulemaking provision similar to the one that was enacted as bringing together in one place the various references in the 1977 act to the court's rulemaking powers. In conjunction with that explanation, the bill analysis notes that the rulemaking requirements of APTRA are inapplicable to the Texas Supreme Court, and cites as support the definition of "agency" in section 3(1) of APTRA. We do not construe the absence of an additional statement concerning the applicability of APTRA to the disciplinary hearings of the board as dispositive of your question. The statement concerning the inapplicability of the rulemaking requirements of APTRA was included as part of the bill analysis simply to satisfy the House Rules that required the bill analysis accompanying a committee report to contain "a statement generally describing the scope of and the reasons for any rulemaking authority delegated to a state officer, department, agency." See House Rule 4 § 29(c)(4) (1983 rules); House Rule 4 § 33(c)(4) (1991 rules).

In summary, we believe a Texas court would construe the exclusion for "the courts" in APTRA to cover the board. The history of the statutory provisions authorizing regulation of the practice of shorthand reporting documents the status of the board as a disciplinary entity within the judicial branch. Thus, we also believe that a Texas court would find that APTRA does not apply to the board, and consequently, that the board is not subject to article 6252-13f.

## S U M M A R Y

The Court Reporters Certification Board is not subject to article 6252-13f, V.T.C.S., which establishes the State Office of Administrative Hearings.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General