DECISION
This case is before the Court on plaintiff's motion for issuance of a preliminary injunction. North End Realty Company, LLC challenges the legality of a so-called affordable[1] housing fee in East Greenwich. For the reasons stated herein, plaintiff's motion is denied.
 FACTS
The parties stipulated to the facts herein. By agreement, no witnesses testified. *Page 2 
In 1991 the Rhode Island General Assembly enacted the Rhode Island Low and Moderate Income Housing Act to remedy "an acute shortage of affordable, accessible, safe and sanitary housing for its citizens of low and moderate income . . ." R.I.G.L. §§ 45-53-2. Communities such as East Greenwich were mandated to ensure that 10% of their housing stock was for low and moderate income. The General Assembly set forth a variety of incentives and disincentives to encourage the town to meet this goal. R.I.G.L. §§ 45-53-3(2); 45-53-4. One new requirement was for the town to describe how its affordable housing goal would be achieved in its comprehensive plan § 45-22.2-6(3), and to have its specific plan approved by the State Director of Administration. § 45-53-3(7).
Faced with this challenge, East Greenwich submitted its 2005 Affordable Housing Plan to the State.[2] The plan admitted a significant shortfall. With 5,182 housing units in East Greenwich in 2000, only 226 met the definition of affordable. East Greenwich was already 292 units behind the State's goal. (Plan, p. 5). In addition, the median sales price of homes was increasing and already over $360,000. (Plan, pp. 7-8). Noting the increasing demand for building permits, the town plan recognized the goal would become more challenging to attain. The plan set fifteen proposed actions "required to implement the Affordable Housing Plan strategies" (pp. 22, et seq.), several of which dealt with the establishment of a payment-in-lieu.
In the fall of 2006, the East Greenwich Town Council considered and modified the plan, approving the final ordinance on November 6, 2006.
The town enacted Ordinances to implement the plan's design. Ordinance 779 requires a minimum number of affordable housing units with applications for new projects. Ordinance 778 sets a fee-in-lieu allowing applicants to pay a substantial fee if an application for subdivision or *Page 3 
land development does not contain the requisite affordable units.[3]
Ordinance 780 establishes a trust fund into which all of the fees-in-lieu are deposited and used by an affordable housing commission to "develop and preserve affordable housing" through loans, grants and other programs.
North End now proposes a new subdivision on its East Greenwich property. The subdivision will have five residential dwellings, but none will be low or moderate income units. (Stipulation of facts, paragraphs 12, 13). North End seeks no zoning variances or density increases. North End refuses to pay the fee-in-lieu or subdivide its property (Stipulation of facts, paragraph 17), and instituted this action to challenge the ordinances.
 ANALYSIS Elements of Preliminary Injunction
In determining whether a preliminary injunction should be granted, the trial justice should consider "(1) whether the moving party has established a reasonable likelihood of success on the merits; (2) whether the moving party will suffer irreparable harm without the requested injunctive relief; (3) whether the balance of the equities, including the public interest, weighed in favor of the moving party; and (4) whether the issuance of a preliminary injunction served to protect the status quo." Allaire v. Fease, 824 A.2d 454, 457 (2003). Citations omitted.
A critical element for injunctive relief is the establishment of the likelihood of success on the merits. King v .Grand Chapter of R.I. Orderof the Eastern Star, 919 A. 2d 991, 995 (R.I. 2007). North End launches a multi-pronged attack on the East Greenwich fee-in-lieu claiming *Page 4 
(1) the Town has no authority to tax and the tax is therefore illegal, (2) the fee violates substantive due process, (3) the fee violates equal protection, (4) that it constitutes an illegal taking.
 The Fee is Not an Illegal Tax
North End's central contention is that the fee-in-lieu is really a tax. The distinction between a fee and a tax is crucial. A state or local governmental entity may not impose a tax without express authorization from the Rhode Island General Assembly. "[A]uthority to tax is granted only by unequivocal instructions found in the Rhode Island Constitution and statutes enacted by the Rhode Island legislature. Rhode Island courts must assiduously protect the people from abuse of the government's taxing authority by requiring strict adherence to these unequivocal questions . . ." Cabana v. Littler,612 A.2d 678, 684 (R.I. 1992).
The Town counters that the payments are appropriate fees, not taxes. It claims the sole purpose of imposing the fee and earmarking it to a limited use fund, is to achieve the state-mandated goal, while allowing continued development.
In Kent County Water Authority v. R.I. Department of Health,723 A.2d 1132 (R.I. 1999), our high court considered the distinction between a fee and a tax. The Court questioned whether mandated charges to approve the operators of public water supply systems were taxes (for which the authority could claim an exemption) or licensing fees. The statute not only labeled the charge as a fee, but indicated the charges were to compensate a state department for analyzing documents and conducting inspections. The fees were deposited into state funds as general revenues. The touchstone was whether "legally competent evidence indicates that *Page 5 
DOH's annual approval fee is primarily a licensing charge to defray the costs incurred by DOH in connection with its regulation . . ." KentCounty Water at 1135.[4]
A pivotal issue is whether the goal is to increase revenue or defray costs. While the DOH imposed a fee to defray it costs for regulations inKent County Water, in the case at bar, East Greenwich imposed a fee to provide for affordable housing. Affordable housing is mandated by the state — the town has no alternative. The town, in turn, logically imposes the same requirement on all developers of new property. It also allows the developers to avoid the construction of affordable housing by paying the fee-in-lieu. The fee is mathematically calculated to enable the town to meet the state's affordable housing mandate itself, when and if developers fail to do so.
There were other alternatives for the town to achieve affordable housing, other than the imposition of a substantial fee. One alternative would have been to simply pass Ordinance 779 (requiring the affordable housing in all new development), without Ordinance 778 (providing for the fee-in-lieu alternative if no affordable housing is to be built). This would ban development that does not contain affordable housing. By enacting the fee-in-lieu Ordinance, the town attempted to accommodate developers such as North End. Ironically, if North End is successful in challenging the fee-in-lieu Ordinance, it still faces the hurdle of Ordinance 779 and hence may not be able to develop at all. *Page 6 
The holding of a distinguished justice of this Court is helpful and applicable here.
 Plaintiffs argument that the referral fee imposed . . . represents an illegal tax is unavailing. . . . Further, the burden falls upon the plaintiffs to show that the referral fees charged . . . are not related to the costs of implementing the regulatory scheme. Grasso Service Center, Inc. v. Sepe, 2007 R.I. Super. LEXIS 39, 24-27 (R.I.Super. 2007).
North End has not met its burden. North End has not demonstrated the fee-in-lieu is designed to raise general revenue. While it is not the town's burden, East Greenwich has demonstrated that the payment is designed to defray its significant, anticipated costs. The town is obligated to increase its stock of low and moderate income housing. The town imposes this requirement on all developers. The fee is imposed only when developers request permission to construct new housing units, but do not propose low or moderate income housing. The fee is directly proportionate to the number of units proposed and the resultant increased deficit in affordable housing stock.[5]
The fee is earmarked to a trust fund used for affordable housing creation. East Greenwich Ordinance 778, Section 93-14; Ordinance 780, Section 34-31(B). The expressed purpose of the fee is "for the development and preservation of affordable housing". Ordinance 780, preface to Article IX. The actual purpose is (and the only possible use of the monies can be) to meet the affordable housing mandate. Apart from accomplishing this goal, the town receives no revenue stream.
While cities and towns are restricted in imposing new taxes, fees are different. Even towns with home rule charters cannot impose taxes without the consent of the General Assembly. Rhode Island Constitution Article 13, section 5. However, imposition of a fee, which *Page 7 
will legitimately assist the town's regulatory power, is acceptable.State v. Foster, 22 R.I. 163, 174 (1900).
The East Greenwich fee-in-lieu is a fee, not a tax.[6]
 Substantive Due Process
North End also contends that the Town of East Greenwich violated its substantive due process rights. The Due Process guaranties of theFourteenth Amendment to the United States Constitution forbid a state or municipality from depriving a person of life, liberty, or property without due process of law. In order to establish a substantive due process, a plaintiff must first show a deprivation of a protected interest in life, liberty or property. Rivera v. Rhode Island,402 F.3d 27, 33 (CA 1, 2005). North End also must establish that the deprivation occurred through governmental action that shocks the conscience.Clark v. Boscher, 513 F.3d 107, 113 (CA 1, 2008). In Clark, the Circuit Court considered whether a substantive due process violation had occurred because of continued rejection of proposed land development by several local boards. The Court of Appeals found it to be a "run-of-the-mill land-use case [which] does not rise to the level of behavior that shocks the conscience". Clark at p. 113. Hence no substantive due process violation was adequately alleged. While the plaintiffs in Clark were contesting their denial of necessary permits to develop residential property, North End is not protesting a denial, but the mandated fee payment if it does not also construct affordable housing. North End has not established that any right to develop the property has vested or has been impaired. The *Page 8 
regulatory scheme enacted in East Greenwich merely requires developers who continue the problem to pay for the mandated cure. Increasing fees so that the town may meet its mandate, is neither arbitrary nor unreasonable. See Village of Euclid v. Amber Realty Company,272 U.S. 365, 47 S. Ct. 114, 71 L.Ed. 303 (1926).
The Rhode Island Supreme Court has followed the same method of analysis in determining whether a substantive due process violation has occurred under the Rhode Island Constitution Article 1, Section 2. InRiley v. Rhode Island Department of Environmental Management,941 A.2d 198 (2008), the Court found that no substantive due process violation was committed where no fundamental right was in issue. Riley held that the plaintiff failed to meet its burden of showing clearly arbitrary and unreasonable action of the state, without substantial regulation to the public health, safety, morals or general welfare. Riley at 207.
 Equal Protection
Article 1, Section 1 of our Rhode Island Constitution contains an equal protection safeguard. Courts apply different levels of scrutiny when examining governmental action involving classifications of persons. As North End suggests (plaintiff's Memorandum at page 26) with the low level of scrutiny the town need only show a rational basis for its governmental action. As Riley held
 [U]nder the equal protection clause legislative classifications that do not affect a fundamental right or a suspect class such as race, alienage or national origin, are examined under a `minimal-scrutiny' analysis. Under minimal scrutiny the Legislature has a wide scope of discretion to enact laws which will be upheld as long as they bear a reasonable relationship to public health, safety or welfare." Riley, at 211.
North End claims no fundamental right, and only questions whether the fee-in-lieu bears a rational relationship to the purpose. As the purpose is to obtain affordable housing pursuant to *Page 9 
the state mandate, and North End has put forth no proof to establish[7] that the earmarked funds will be used for another purpose, the statutory scheme of the Town of East Greenwich readily survives the minimum scrutiny analysis.
Perhaps the best illustration to demonstrate the logic of the multi-faceted ordinance scheme is the town's 2005 Affordable Housing Plan (Joint Exhibit C). The plan considers the state mandate, the current shortfall, the increasing gap of future projections and various alternatives available to the town. The plan notes the town's limited opportunity to expand its own housing stock, but discusses doing so with the projects now underway. It then looks to control future growth. The plan realistically factors in the prosperity and desirability of the town (resulting in high property values) and surmises the state housing goal can best be accomplished by sharing the onus with those who seek to expand the residential housing stock. The fee is therefore designed (and explicitly earmarked) to finance new affordable housing in the community. Overall, the plan evidences a reasoned, logical approach to confronting the state mandate. The three ordinances clearly incorporate the provisions of the plan.
 Inverse Condemnation
North End next contends that the fee-in-lieu constitutes an unconstitutional taking of property without compensation. It relies on the Rhode Island Supreme Court decision in Alegria v. Keeney,687 A.2d 1249 (R.I. 1997). Alegria applied only when the regulation "does not substantially advance legitimate state interests . . . or denies an owner economically viable use of his land." Alegria at 1253, citingAgins v. Tidyron, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141,65 L.Ed.2d 106, 1123 (1980). Though it carries the burden of proof, North End proved neither. As *Page 10 
stated above, the fee is at least rationally related to the state's attempts to provide certain housing. North End put forth no evidence to establish that its land has no other economic feasibility (though presumably North End would be able to build fewer residences if it cannot subdivide its lot). North End has not even attempted to demonstrate the financial hardship of its proposed development with the additional fee — there is no financial projection at all.
As the taking is not a deprivation of all use, the court applies the analysis of Penn Central Transportation Co. v. New York City,438 U.S. 104, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978). In Penn Central, the U.S. Supreme Court considered three separate factors in analyzing whether a taking occurred:
 (1) "[T]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." Id. at 124, 98 S. Ct. at 2659, 57 L. Ed. 2d at 648.
As North End produced no economic analysis of the impact which the new fee would have on its ability to subdivide and develop, this Court cannot speculate on any impact on expectations of investors.[8] The character of the governmental action is obvious — there is an additional fee. There is no physical invasion of the property by the government — hence the plaintiff has failed to show a taking of Constitutional significance. East Greenwich simply sought to encourage builders to construct affordable housing or the town will do so from their payments of the fee-in-lieu.
In more recent cases, the United States Supreme Court continued to require a nearly complete deprivation before requiring compensation. InTahoe-Sierra Preservation Council, Inc. *Page 11 v. Tahoe Regional Planning Agency, 535 U.S. 302, at 327 (U.S. 2002), a temporary deprivation (a building moratorium) did not warrant compensation and "the aggregate must be viewed in its entirety." InPalazzolo v. Rhode Island, 533 U.S. 606, 625 (2001), the high court succinctly held:
 The mere allegation of entitlement to the value of an intensive use will not avail the landowner if the project would not have been allowed under other existing, legitimate land use limitations.
The town's actions do not constitute a substantial deprivation of property. Rather, the fee-in-lieu ordinance allowed developers an alternative: Continue to develop higher-end housing as long as the town's long-term costs were compensated. This ordinance structure was legitimate, and designed to meet the state mandate. North End has not demonstrated a taking.
 Policy Considerations
By this action, North End does not question the state's affordable housing statutes or the constitutionality of the General Assembly initiatives. Obligated by the state mandate, the town implemented a reasoned approach to a problem it was directed to address. While others may question whether the town or the state made the correct policy choice, the function of the court here is merely to determine whether the choice made passes constitutional muster. As the Rhode Island Supreme Court has recently restated, the better avenue to correcting a questionable policy lies with the respective legislative bodies.
 . . . Sindelar v. Leguia, 750 A.2d 967, 972 (R.I. 2000) ("[O]ur assigned task is simply to interpret the Act, not to redraft it * * *."); see generally Dodd v. United States, 545 U.S. 353, 359-60, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005) ("It is for Congress, not this Court, to amend the statute if it believes that [the statutory language leads to undesirable consequences].");. . . . The role of the judicial branch is not to make policy, but simply to determine the *Page 12 
legislative intent as expressed in the statutes enacted by the General Assembly. (citations deleted.) . . .
 We know that sometimes our decisions result in palpable hardship to the persons affected by them. It is, however, a fundamental principle of jurisprudence that a court has no power to grant relief in the absence of jurisdiction, as is true in the instant case. Ours is not a policy-making branch of the government. We are cognizant of the fact that this observation may be cold comfort to the parties before us. But, if there is to be a remedy to this predicament, fashioning such a remedy would fall within the province of the General Assembly. Chambers v. Ormiston, 935 A.2d 956 (R.I. 2007).
Therefore, the court leaves the policy considerations to the legislative bodies.
 CONCLUSION
North End failed to establish a likelihood of success on the merits, a necessity for obtaining injunctive relief. King v .Grand Chapter of R.I.Order of the Eastern Star, 919 A. 2d 991, 995 (R.I. 2007) It has also failed to show the likelihood of irreparable harm[9], or that the injunction would protect the status quo, or that a balancing of the equities would favor issuance of an injunction.
Plaintiff's motion for a preliminary injunction is denied.
[1] Affordable, as used herein, refers to housing for those with low or moderate incomes. See § R.I.G.L. 42-128-8.1(b) (1).
[2] The plan is Joint Exhibit C herein and was approved by the Director of Administration on September 26, 2005.
[3] The fee is significant — $200,000 per unit multiplied by the number of affordable units required but not built. East Greenwich Ordinance 778. For plaintiff, this fee would be $200,000 (as it is building five units, none of which are deemed affordable), in a district which requires twenty percent of all new units to be affordable. The fee is due upon recording the final approved subdivision.
[4] The complete discussion by the Supreme Court in Kent CountyWater is instructive:
 We have previously noted the distinction between a tax — which is primarily a revenue-raising measure — and a licensing fee — which is primarily a regulatory imposition. See State v. Foster, 22 R.I. 163, 171, 46 A. 833, 835-36 (R.I. 1990) ("if the imposition *** has its primary object the regulation of the business, trade, or calling to which it applies, its exercise is properly referable to the police power; but, if the main object is the obtaining of revenue, it is properly referable to the taxing power.") see also Berberian v. Kane, 425 A. 2d 257 (R.I. 1981) (holding that annual dues paid to the state bar association are license fees, not taxes); Petition of Rhode Island Bar Association, 118 R.I. 489, 374 A.2d 802 (1977) (same); cf. Sinclair Paint Co. v. State Board of Equalization, 15 Cal. 4th 866, 64 Cal.Rptr.2d 447, 937 P.2d 1350, 1358 (Cal. 1997) ("[A]ll regulatory fees are necessarily aimed at raising `revenue' to defray the cost of the regulatory program in question, but that fact does not automatically render those fees `taxes.' *** [I]f regulation is the primary purpose of the fee measure, the mere fact that the measure also generates revenue does not make the imposition a tax."). Kent County Water at 1135 (Emphasis in original.)
[5] "The fee shall be $200,000 per unit multiplied by the number of affordable units not built." East Greenwich Ordinance 778, November 6, 2006. Section 93-13(2)(A).
[6] In the alternative, North End also submits that the tax is not related to its intended purpose and excessive as the fee is calculated according to the number of affordable housing units not built, and the funds are earmarked for the development of affordable housing. This argument does not stand. North End contends that it hurts only those who develop new property. As the fee is directed to developers who need the permission of the town to construct new housing (and who should be constructing the affordable housing) imposing a fee-in-lieu on the developers appears to be more rational and even accommodating. North End cites several New Jersey cases to establish that the fee cannot exceed the cost of the service, but has not submitted any proof that the fees generated here will exceed the cost of creating the affordable housing.
[7] Riley underscored the moving party's burden: "[W]e are mindful that the statute already carries a presumption of constitutionality and it is Riley's burden to show that it is unconstitutional beyond a reasonable doubt. Riley at 212.
[8] North End attempts to reverse its burden by claiming that "while this purpose may be valid, the Town has not conducted any studies and/or reports which would provide a nexus." Plaintiff's memorandum at pages 30-31. This statement ignores its own burden of proof and ignores the significant detailed study made by the town in establishing a plan to provide affordable housing. The ordinances were simply the end result of a detailed study and plan by the town of East Greenwich to meet the statutory need. See Defendant's Exhibit C to its Memorandum of Law in Support of Objection to Motion for Injunctive Relief.
[9] As it seems the only dispute is whether a fee should be paid prospectively, a suit for damages would obviate the need for equitable relief.