## NANCY L. SOBOCINSKI *v.* STATEWIDE GRIEVANCE COMMITTEE ET AL.
### (13829)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued April 11—decision released June 26, 1990

*Barton J. Craig,* pro hac vice, with whom was *Nancy L. Sobocinski,* for the appellant (plaintiff).

*Christine M. Whitehead,* for the appellee (named defendant).

*William J. Curran,* pro se, the appellee.

GLASS, J. The dispositive issue in this appeal is whether the statewide grievance committee[1] (SGC) is an administrative agency as defined in General Statutes § 4-166 (1)[2] of our Uniform Administrative Procedure Act (UAPA). The plaintiff, Nancy L. Sobocinski, has appealed, from a decision of the trial court dismissing her appeal from a decision of the SGC. The trial court held that the SGC is not an administrative agency as defined by § 4-166 (1), and, as a result, dismissed the plaintiff's appeal for lack of subject matter jurisdiction. We agree with the trial court's determination.

---

[1] "[General Statutes] Sec. 51-90. STATE-WIDE GRIEVANCE COMMITTEE. APPOINTMENT, QUALIFICATIONS AND TERMS OF MEMBERS. There shall be a state-wide grievance committee which shall consist of fifteen persons appointed by the judges of the superior court. At least four of the members shall not be attorneys-at-law and the remainder of the members shall be members of the bar of this state. The judges shall designate one member as chairman and another member as vice-chairman to act in the absence or disability of the chairman. Of the members first appointed prior to October 1, 1988, four members shall serve for a term of one year, four members shall serve for a term of two years and four members shall serve for a term of three years. Of the three new members first appointed on or after October 1, 1988, one member shall serve for a term of one year, one member shall serve for a term of two years and one member shall serve for a term of three years. Thereafter, all members shall serve for a term of three years commencing July first. Any vacancy in the membership of the committee shall be filled by the executive committee of the superior court which shall appoint an attorney-at-law or non-attorney, depending on the position vacated, for the unexpired portion of the term."

[2] General Statutes § 4-166 provides in pertinent part: "(1) 'Agency' means each state board, commission, department or officer, other than the legislature, courts, judicial review council, council on probate judicial conduct, governor, lieutenant governor, attorney general, town or regional boards of education, or automobile dispute settlement panels established pursuant to section 42-181, authorized by law to make regulations or to determine contested cases." This statute was amended effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 1, 107.

The record reveals the following facts. In August, 1984, the plaintiff was injured as a result of a collision between her automobile and an automobile owned and operated by Dennis Edgeworth. The plaintiff retained the services of attorneys Bruce L. Levin and Ernest Teitell, and brought suit against Edgeworth in the federal court in Connecticut. Edgeworth then instituted a negligence action against the plaintiff in Connecticut state court. The Great American Insurance Company, the insurance carrier for the plaintiff, retained attorney William J. Curran to represent its interest and the interest of the plaintiff in the state court negligence action. On February 25, 1987, Curran filed an appearance as the plaintiff's attorney in the state court action. Thereafter, Barton J. Craig, who is an attorney and the husband of the plaintiff, wrote Curran requesting that copies of all documents filed in the state court action be forwarded either to the plaintiff or himself. On November 25, 1987, the Great American Insurance Company, acting through its adjuster, Charles Vaiciulis, settled the state court action with the attorney representing Edgeworth. Curran then filed a release and withdrawal of the state court action without notifying the plaintiff of the settlement. Curran did, however, notify Levin, her attorney, of the settlement. According to the plaintiff, she first learned of the settlement from Teitell, also her attorney, in December, 1987, on the eve of the jury selection in her action against Edgeworth in the federal court.

On May 6, 1988, the plaintiff filed a complaint with the SGC alleging a violation by Curran of Rules 1.2,[3]

---

[3] "[Rules of Professional Conduct] Rule 1.2 SCOPE OF REPRESENTATION

"(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's deci-

1.3 and 1.4 of the Rules of Professional Conduct for attorneys. On May 16, 1988, pursuant to General Statutes § 51-90e,[4] the plaintiff's complaint was referred to the grievance panel for the Fairfield judicial district. On June 23, 1988, the Fairfield judicial district griev-

sion, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

"(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

"(c) A lawyer may limit the objectives of the representation if the client consents after consultation.

"(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

"(e) When a lawyer knows that a client expects assistance not permitted by the rules of professional conduct or other law, the lawyer shall consult with the client regarding the relevant limitations on the lawyer's conduct."

"Rule 1.3 DILIGENCE

"A lawyer shall act with reasonable diligence and promptness in representing a client."

"Rule 1.4 COMMUNICATION

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[4] "[General Statutes (Rev. to 1987)] Sec. 51-90e. FILING OF COMPLAINT ALLEGING ATTORNEY MISCONDUCT. REFERRAL TO GRIEVANCE PANEL. (a) Any person may file a written complaint alleging attorney misconduct. A grievance panel may, on its own motion, initiate and file a written complaint alleging attorney misconduct. A complaint against an attorney shall be filed with the state-wide bar counsel. Within five days of the receipt of a complaint the state-wide bar counsel shall:

"(1) Forward the complaint to the appropriate grievance panel as determined under rules of court; and

"(2) Notify the complainant and the respondent, by certified mail, return receipt requested, of the panel to which the complaint was forwarded. The notification to the respondent shall be accompanied by a copy of the complaint.

ance panel filed a determination of no probable cause in regard to the plaintiff's complaint. On October 20, 1988, contrary to the finding of the Fairfield judicial district grievance panel, the SGC made a determination that there was probable cause that Curran had violated Rules 1.2, 1.3 and 1.4 of the Rules of Professional Conduct. On December 14, 1988, a reviewing committee of the SGC conducted a hearing based on the probable cause finding of the SGC.[5] At this hearing, the

"(b) The respondent shall have the right to respond within ten days of receipt of notification to the grievance panel to which the complaint has been referred.

"(c) The state-wide bar counsel shall keep a record of all complaints filed with him. The complainant and the respondent shall notify the state-wide bar counsel of any change of address or telephone number during the pendency of the proceedings on the complaint.

"(d) If for good cause shown, a grievance panel declines, or is unable pursuant to sections 51-90 to 51-91b, inclusive, to investigate a complaint referred to the panel, such panel shall forthwith return the complaint to the state-wide bar counsel to be referred by him immediately to another panel. The state-wide bar counsel shall give notice of such referral to the complainant and the respondent by certified mail, return receipt requested."

[5] "[General Statutes] Sec. 51-90g. REVIEW OF PANEL'S DETERMINATION BY SUBCOMMITTEE OR STATE-WIDE GRIEVANCE COMMITTEE. (a) The state-wide grievance committee may designate at least three members of the committee, including at least one-third who are not attorneys, to serve as a reviewing subcommittee for each determination made by a panel on a complaint. The committee shall regularly rotate membership on reviewing subcommittees and assignments of complaints from the various judicial districts. The state-wide grievance committee or the subcommittee, if any, shall hold a hearing concerning the complaint if the panel determined that probable cause exists that the attorney is guilty of misconduct. If the grievance panel determined that probable cause does not exist that the attorney is guilty of misconduct, the committee or subcommittee shall review the determination of no probable cause, take evidence if it deems it appropriate and, if it determines that probable cause does exist that the attorney is guilty of misconduct, shall thereafter hold a hearing concerning the complaint. An attorney who maintains his office for the practice of law in the same judicial district as the respondent may not sit on the reviewing subcommittee for that case.

"(b) Any hearing held by the committee or subcommittee shall be public and on the record. The complainant shall be entitled to be present at all hearings on the complaint and to have counsel present. At such hearing the respondent shall have the right to counsel, to be heard in his own defense

plaintiff and Craig testified in support of the allegations in the complaint, and Curran and Vaiciulis, the adjuster, testified in opposition to the allegations in the complaint. On February 24, 1989, the reviewing committee, in its proposed decision, concluded that Curran was responsible for keeping the plaintiff informed about her case and that, by failing to inform the plaintiff or Craig of the settlement, Curran had violated Rule 1.4. The reviewing committee, however, found insufficient proof of violations of Rules 1.2 and 1.3 The reviewing committee then recommended that the SGC

and to present evidence and witnesses in his behalf. At the conclusion of the evidence, the complainant and the respondent shall have the opportunity to make a statement either individually or through counsel. The committee or subcommittee may request oral argument.

"(c) The subcommittee shall conclude any hearing or hearings and shall render its proposed decision not later than ninety days from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The subcommittee may file a motion for extension of time not to exceed thirty days with the state-wide grievance committee which shall grant the motion only for good cause shown. If the subcommittee does not complete its action on a complaint within the period of time provided in this section, the state-wide grievance committee shall, on motion of the complainant or the respondent or on its own motion, inquire into the delay and determine the appropriate course of action. The failure of the subcommittee to complete its action on a complaint within the period of time provided in this section shall not be cause for dismissal of the complaint.

"(d) If the subcommittee finds probable cause to believe the attorney has violated the criminal law of this state it shall report its findings to the state-wide grievance committee.

"(e) The subcommittee may propose in its decision to dismiss the complaint, reprimand the attorney or present the attorney to the superior court for reprimand, suspension or disbarment.

"(f) The subcommittee shall submit its proposed decision to the state-wide grievance committee, with copies to the complainant and respondent. The proposed decision shall be a matter of public record.

"(g) When the committee conducts the hearing or hearings under this section, it shall render its decision not later than four months from the date the panel's determination of probable cause or no probable cause was filed with the state-wide grievance committee. The state-wide grievance committee may dismiss the complaint, reprimand the respondent or direct the state-wide bar counsel to file a presentment against the respondent."

reprimand Curran. Thereafter, the plaintiff claims that, unbeknownst to her, Curran filed statements with the SGC opposing the recommendation of the reviewing panel.

On May 1, 1989, the statewide bar counsel sent a letter to the plaintiff and Curran informing them that the SGC, at a meeting held on April 20, 1989, had decided not to adopt the proposed decision of the reviewing committee, even though the SGC had determined that Curran's failure to inform the plaintiff of the settlement directly did constitute a violation of the Rules of Professional Conduct. The letter concluded: "[I]n reviewing the entire record, including [Curran's] good faith disclosure of the settlement to [the plaintiff's] counsel of record on the federal action, and [Curran's] recognition of the importance of direct attorney-client communication, the Committee concluded that the imposition of discipline on [Curran] for this matter was not warranted. Accordingly, the complaint is hereby DISMISSED by the Statewide Grievance Committee."

On June 2, 1989, the plaintiff filed an appeal to the Superior Court from the decision of the SGC, claiming that the SGC is an agency of the state of Connecticut as defined in § 4-166 (1), and that she was therefore entitled to appeal its decision pursuant to § 4-183 (b).[6]

---

[6] "[General Statutes] Sec. 4-183. APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

"(b) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-

The SGC moved to dismiss the plaintiff's appeal, claiming that service on it was improper and that the SGC is not an agency as defined by § 4-166 (1). Curran also filed a motion to dismiss. He claimed that the SGC is an arm of the court and is not an agency as set forth in § 4-166 (1), and that proceedings before the SGC are neither contested nor adversarial, but rather are an investigation by the court into the conduct of one of its officers.

The trial court concluded that the SGC is not an agency under § 4-166 (1). Consequently, the trial court ruled that the plaintiff could not pursue her appeal pursuant to § 4-183, and granted the SGC's and Curran's motions to dismiss. The plaintiff appealed to the Appellate Court, and pursuant to Practice Book § 4023, this court transferred the appeal to itself. On appeal, the plaintiff claims: (1) that the trial court should have concluded that §§ "4-166, 4-183 and 51-90 mandate an appeal pursuant to § 4-166 et seq. as the only statutorily approved method by which a citizen may obtain judicial review of an erroneous decision of the [SGC] by means of mailed service of process on the [SGC]"; and (2) that "the trial court's ruling contravene[d] the public policy motivating the decision of [this] court in *Statewide Grievance Committee* v. *Rozbicki,* [211 Conn. 232, 558 A.2d 986 (1989),] which supports [her] claim

New Britain within forty-five days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within forty-five days after mailing of the notice of the decision thereon. Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice or, if a rehearing is requested, within thirty days after mailing of the notice of the decision thereon, except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

This statute was amended effective July 1, 1989, by Public Acts 1988, No. 88-317, §§ 23, 107.

that a citizen may appeal the dismissal of her meritorious complaint by the [SGC] via the mailed service of process provisions of Connecticut's Uniform Administrative Procedure Act."

Because we agree with the trial court that the SGC is not an agency within the definition provided in § 4-166 (1), it is unnecessary to consider the other issues raised by the plaintiff on this appeal.

At the time of this appeal, "[a]gency" under § 4-166 (1) was defined as follows: " 'Agency' means each state board, commission, department or officer, *other than* the legislature, *courts,* judicial review council, council on probate judicial conduct, governor, lieutenant governor, attorney general, town or regional boards of education, or automobile dispute settlement panels established pursuant to section 42-181, authorized by law to make regulations or to determine contested cases." (Emphasis added.) An administrative agency within the meaning of the UAPA has been defined as "a body in which the legislature has reposed general powers of administration of a particular state program in connection with which it has been given statutory authority to act for the state in the implementation of that program." *Catholic Family & Community Services* v. *Commission on Human Rights & Opportunities,* 3 Conn. App. 464, 467, 489 A.2d 408 (1985).

Judges of the Superior Court possess the "inherent authority to regulate attorney conduct and to discipline the members of the bar." *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo,* 190 Conn. 510, 523, 461 A.2d 938 (1983). "It is their unique position as officers and commissioners of the court . . . which casts attorneys in a special relationship with the judiciary and subjects them to its discipline." Id., 524. "In exercising their inherent supervisory authority, the judges have authorized grievance panels and reviewing committees

to investigate allegations of attorney misconduct and to make determinations of probable cause. See Practice Book § 27B et seq. Further, the judges have empowered the statewide grievance committee to file presentments in Superior Court seeking judicial sanctions against those claimed to be guilty of misconduct. See Practice Book § 27M. In carrying out these responsibilities, these bodies 'act as an arm of the court.' *Statewide Grievance Committee* v. *Rozbicki*, 211 Conn. 232, 239, 558 A.2d 986 (1989)." *Statewide Grievance Committee* v. *Presnick*, 215 Conn. 162, 167, 575 A.2d 210 (1990). In sum, the SGC is an "arm of the court," and is not a body in which the legislature has reposed general powers of administration of a particular state program with which it has been given statutory authority to act for the state in the implementation of that program. We therefore hold that the SGC is excluded under the definition of "agency" set forth in § 4-166 (1).

The plaintiff additionally argues that "the public policy motivating" this court's decision in *Statewide Grievance Committee* v. *Rozbicki,* supra, supports her claim that a citizen may appeal, via the UAPA, the dismissal of her meritorious complaint by the SGC. We are unpersuaded. In *Rozbicki,* the SGC brought a presentment against the defendant attorney charging him with misconduct outside the presence of the court. Id., 234. The trial court granted the defendant attorney's motion to dismiss the presentment for lack of subject matter jurisdiction because the subcommittee appointed by the SGC to review the charges had not rendered its proposed decision on the complaint within ninety days as specified under General Statutes § 51-90g (c). Id., 237. The SGC then appealed the trial court's dismissal, and this court held that the SGC had not lost subject matter jurisdiction as a result of the subcommittee's failure to adhere to the aforementioned time constraint. Id. There is nothing in *Rozbicki,* how-

ever, to support the plaintiff's claim that a complainant may invoke the provisions of the UAPA in order to appeal the dismissal by the SGC of her complaint. Rather, *Rozbicki* concerns an appeal by the SGC from the trial court's dismissal, on procedural grounds, of a presentment that was, jurisdictionally speaking, properly before the court.

The judgment is affirmed.

In this opinion the other justices concurred.