Barbara MONSKY

v.

Howard J. MORAGHAN.

No. 3:97CV01616PCD.

United States District Court,
D. Connecticut.

April 19, 1999.

Nancy Burton, Redding Ridge, CT, for plaintiff.

Robert J. Cooney, Ronald D. Williams, Michael Richard Brandt, Williams, Cooney & Sheehy, Patricia Ellen Curtin, Dennis M. Laccavole, Goldstein & Peck, Bridgeport, CT, for defendant.

## MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT

DORSEY, District Judge.

In an earlier suit ("*Monsky I*") plaintiff alleged that, by virtue of his dog's conduct in the Danbury Superior Courthouse, defendant violated her rights by infringing her constitutional right of access to the courts.[1] That case was dismissed, *Monsky v. Moraghan,* 947 F.Supp. 53 (D.Conn. 1996), Motion to Amend den., 950 F.Supp. 476 (Goettel, J.), *aff'd,* 127 F.3d 243 (2d Cir.), *cert. den.,* —— U.S. ——, 119 S.Ct. 66, 142 L.Ed.2d 52 (1998). The complaint was found not to have alleged infringement of that right.

While *Monsky I* was pending this action was brought alleging retaliatory conduct by defendant for plaintiff's having brought *Monsky I.*[2] Her Summary of Complaint describes her claim here:

> ... that the defendant has engaged in retaliatory conduct intended to interfere with and obstruct the due administration of justice and plaintiff's exercise of First Amendment rights in her suit entitled *Barbara Monsky v. Howard J. Moraghan,* pending on appeal to the Court of Appeals for the Second Circuit and scheduled for presentation of oral argument on September 11, 1997.

The "First Claim for Relief: 42 U.S.C. § 1983" recites a deprivation of "constitutionally protected rights including the rights to due process of law, equal protection of the law and First Amendment liberties." No other allegation of the Complaint can be reasonably construed to substantiate a due process or equal protection claim. Nothing is alleged, shown, nor briefed to sustain plaintiff's claim of denial of due process. The conduct was allegedly directed at plaintiff alone or through her attorney and thus cannot constitute an equal protection violation. Nothing in Ms. Monsky's affidavit sustains a finding of the class discrimination required for an equal protection action. As noted at oral argument, due process and equal protection were treated as unfounded, both as a matter of pleading and as factually unsupported after considering plaintiff's discovery compliance, her response to the Court's Trial Preparation

---

1. Though cast partly as a class action, it was never so certified.

2. When this complaint was filed, *Monsky I* was on appeal. It was argued on September 11, 1997 and decided October 2, 1997.

Order and her response to the defendant's Motion for Summary Judgment. Plaintiff then offered no additional substantiation of either claim. See Tr. of Oral Argument on Motion for Summary Judgment, April 5, 1999.

The "Second Claim for Relief: 42 U.S.C. § 1985" asserts a conspiracy by defendant and others to deny equal protection, broadly alleging retaliatory interference with the "due course of justice in the State of Connecticut ... to injure [plaintiff] or her property ..." The assertions as to equal protection and injury to plaintiff or her property are also unfounded in the pleadings and factually as noted above. A § 1985 claim requires proof of class-based discrimination, *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (1994), of which there is no proof in the record.

The "Third Claim for Relief: Intentional Infliction of Emotional Distress" states, conclusorily, a state law claim without further factual allegations.

The "Fourth Claim for Relief: 42 U.S.C. § 1988" invokes that section for any "remedies available," here the recovery of attorney and expert fees by a prevailing party. Dismissal of the First and Second Claims require dismissal of this Fourth Claim.

Plaintiff sought, in oral argument, to broaden the claim of impairment of her right to prosecute litigation to unspecified litigation other than *Monsky I*. Based on the noted Claim Summary, the repeated references to *Monsky I* in the Complaint, the lack of any reference in the Complaint to litigation other than *Monsky I* involving plaintiff, and the absence of any reference other than to *Monsky I* in any other pleading which might be argued to have defined its scope, her claim is deemed limited to adverse impact on her prosecution of *Monsky I*. In the Ruling on Motion to Dismiss, dated April 23, 1998, the contemplation that the claims herein were limited to impairment of the prosecution of *Monsky I* was clearly stated. See Id. at 281–82. Plaintiff has never taken exception to that

reading of the Complaint until the argument on April 5, 1999. No pleading by plaintiff, after the Ruling, took issue with the stated contemplation of the intended scope of the claim in this case or alerted the court and counsel to any intended greater scope of the claimed impairment other than to *Monsky I*.

**Claims:**

The history of *Monsky I* is articulated in the cited rulings to which the reader may refer.

The conduct of defendant cited as retaliatory is as follows:

a) He falsely denied to the media the accusations in *Monsky I*. Compl. ¶ 11.

b) He participated with court personnel in publishing letters in a Danbury newspaper derogatory of plaintiff and her attorney for bringing *Monsky I*. Compl. ¶¶ 14–17.

c) He enlisted unidentified people, including attorneys, to write to the newspaper, commenting negatively as to plaintiff and her attorney for *Monsky I*. Compl ¶ 18–19.

d) He conspired with:

1) Superior Court Judges to issue erroneous rulings prejudicial to plaintiff and her attorney. Compl. ¶ 21.

2) the staff (sic) prosecutor to harass. Compl. ¶ 21.

e) He attended a trial where Atty. Burton was counsel, acted so as to distract and intimidate a witness and commiserated with Atty. Burton's opponent. Compl. ¶ 22.

f) He directly or indirectly submitted information *ex parte* to Judge Goettel. Compl. ¶ 23. A speculation in the dismissal of *Monsky I* that the motive for that suit was perhaps dissatisfaction with defendant's decisions is noted in Compl. ¶ 24. Plaintiff alleges that any facts on which such a speculation may have been founded must have been communicated to Judge Goettel *ex parte* by defendant.

g) He and Superior Court Judge Mihalakos grieved Atty. Burton to the Connecticut Grievance Committee, he testified falsely at the hearing and he urged severe discipline for Atty. Burton. Compl. ¶¶ 26–30.

h) His retaliatory conduct was directed "most particularly" at Atty. Burton's oral argument of *Monsky I* at the Second Circuit on September 11, 1997. Compl. ¶ 31.

FACTS:

Plaintiff was the litigant in *Monsky I* and has been a litigant in the Danbury Superior Court. Defendant is a Superior Court Judge and was the defendant in *Monsky I*. He owns a dog which he brought to the Superior Courthouse in Danbury. He denied conduct by his dog offensive to plaintiff and other women as claimed in *Monsky I*.

Judge Patricia Geen, Ronald Desimone and Margaret Evans, Superior Court Reporters, and Patricia Seeley, a Superior Court employee, wrote to the Danbury newspaper supportive of Judge Moraghan and critical of *Monsky I*. Each testified that they wrote of their own initiative and not prompted, suggested or instigated by defendant. No other letter author, including alleged anonymous authors, was identified as having written at the instance of defendant. Compl. ¶ 19.

In all proceedings, plaintiff's attorney has been Ms. Burton.

One Susan Almond McNally purportedly identified herself to Ms. Monsky as having been exposed to the dog and interested in joining the first suit. She later withdrew. No reason was provided in the record. Defendant did enter a courtroom at Danbury where Atty. Burton was acting as counsel. He had been subpoenaed as a witness in that case. He denied improper acts but merely observed. No impropriety or disruption was noted by presiding Superior Judge Stodolink who made several rulings in the case, *Honan v. Dimyan.*

Plaintiffs in that case were members of Atty. Burton's family. After testifying, Dr. Burton, Atty. Burton's father, informed her of a distraction. Atty. Burton had noticed nothing untoward and made no claim of any evidence lost or diminished in Dr. Burton's testimony but she thought he was not as strong a witness as she hoped.

Defendant, in a corridor in the courthouse, talked with Atty. Burton's opposing counsel during the *Honan* trial.

Defendant and Judge Goettel denied any *ex parte* communications with respect to *Monsky I*. No evidence of any such communication was presented by plaintiff whose only claim was that in professional and/or judicial circles contact between judges was so likely as to give rise to a permissible inference of such.

Plaintiff complains of rulings made by Judges Stodolink, Mihalakos, Axelrod and Radcliff. The latter was not a judge until after *Monsky I* was decided by the Second Circuit Court of Appeals and further was not a judge when this Complaint was filed. None of the rulings were in cases in which plaintiff was a party, with one exception. No aspect of the presentation or protection of Ms. Monsky's rights in *Monsky I* were cited by plaintiff as compromised. No evidence of any such conspiracy was cited by plaintiff. The only basis of a claimed inference was the association among Superior Court colleagues.

Defendant, with Judge Mihalakos, filed a grievance against Atty. Burton, which the Grievance Committee sustained. On appeal, the Superior Court sustained the Grievance Committee finding that Ms. Burton "made statements about the integrity of judges of the Superior Court which she knew were false or made with reckless disregard for their truth or falsity." *Burton v. Statewide Grievance Committee,* McWeeney, J., Def. Ex. 14, at 1–2. Atty. Burton is appealing that decision. The filing and processing of the grievance was not shown to have caused plaintiff any loss of the services of counsel in *Monsky I* in

the District Court or the Court of Appeals. The only adverse effect claimed was Ms. Monsky's worry that she might lose Atty. Burton's services. That is legally insufficient

Plaintiff has cited no witness lost in regard to *Monsky I* as a result of any conduct of defendant. Nor has she shown that any woman who might have joined *Monsky I* as a class action plaintiff was discouraged or refrained from doing so by any act of defendant. Plaintiff has cited no authority for her claim that a right of action on behalf of a class was violated. She could have sought to be the only named representative of the class. She cited no authority for the principle that a right to sue as a class representative was violated because one or more members of the class declined to join.

## DISCUSSION:

Summary judgment is warranted if there is "no genuine issue as to any material fact and ... the moving party is entitle to a judgment as a matter of law." FED.R.CIV.P. 56(c). A party opposing summary judgment must demonstrate a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245–46, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Materiality is a matter of substantive law and is found in those "facts that might affect the outcome of the suit under the governing law ... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

To determine existence of a genuine factual dispute, one is not "to weigh the evidence and determine the truth of the matter but [is] to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505; *see Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 54 (2d Cir.1998) ("summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden at trial"). All reasonable inferences must be drawn in favor of the nonmoving party. *Johnson v. NCB Collection*

*Services*, 799 F.Supp., 1298, 1302 (D.Conn. 1992). If "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," an issue exists. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Evidence which is "merely colorable, or is not significantly probative" will not prevent summary judgment. *Sekor v. Capwell*, 1 F.Supp.2d 140, 144 (D.Conn.1998). If movant satisfies his burden of showing the absence of a genuine issue of material fact, nonmovant "must set forth specific facts showing that there is a genuine issue...." *Id.* at 250, 106 S.Ct. 2505. Nonmovant may not rely on pleading allegations and denials but must establish, via affidavits, depositions, admissions and interrogatory answers that a genuine issue of material fact exists. *Id.* at 248, 106 S.Ct. 2505. More than conclusory allegations must be presented to defeat a motion for summary judgment. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d. Cir.1997). The nonmovant may not "simply show some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 582, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Imprecision in the Complaint prompted a detailed inquiry of Atty. Burton at argument on the motion. The purpose was to insure an understanding of all legal theories on which plaintiff relied as well as the evidence claimed to support each claim. The difficulty encountered probably stems from plaintiff's reliance, incorrectly in the view here, on the concept that conduct of defendant complained of was retaliatory by nature and in intent and therefore, without more, plaintiff is entitled to prevail. Negative impact on plaintiff, she argues, is legally unnecessary and thus irrelevant. Retaliate is defined as "to return the like: to inflict in return." WEBSTER-MERRIAM THIRD INTERNATIONAL DICTIONARY 1938 (1981). To prevail without injury is not a familiar theory. *See Lewis v. Casey*, 518 U.S. 343, 349, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996) (The role of courts "is

to provide relief to claimants ..... who have suffered, or will imminently suffer, actual harm").[3]

The Complaint is read to allege that defendant, in retaliation for her having sued him in *Monsky I*, acted to impact plaintiff negatively by interfering with or obstructing plaintiff's quest for justice and exercise of her First Amendment right by prosecuting *Monsky I*. Plaintiff presents no material issue for determination by the trier of fact that would entitle her to recover on that theory. As a matter of law, on the First and Second Claims for Relief, defendant is entitled to summary judgment. Discussion of the legal and factual issues presented would be fruitful.

In oral argument to the Second Circuit on September 11, 1997, one month after this suit was commenced, Atty. Burton stated that the "defendant's behavior had affected Monsky's pursuit of litigation only by disturbing her as she consulted materials in the Clerk's office ..." *Monsky I*, 127 F.3d at 247. While the conduct referred to in *Monsky I* was the sniffing by defendant's dog, there was no claim that presentation of the appeal was affected or compromised by conduct of defendant as now alleged.

Ms. Monsky's deposition, an exhibit to her memorandum opposing the motion, describes the asserted harassment as harassment of her attorney that in turn affects her. *See* Monsky Transcript at 87.

Plaintiff's approach to this case is elucidating. Plaintiff's Local Rule 9(c)(2) Statement of Material Facts in Dispute contains 26 paragraphs, largely repetitive of the Complaint. Twelve are conclusions of fact with no substantiation or foundation. Six state legal conclusions. Seven assert irrelevant facts. One characterizes a tribunal decision as erroneous. Two statements are factually speculative. Plaintiff's personal affidavit contains 43 paragraphs of which 20 state facts which have no relevance to the issues. Six assert conclusions of fact not shown to be within the knowledge of plaintiff. Thirteen assert facts, but mostly deal with persons who might have, but did not, join in *Monsky I* as class members. Three set forth as facts plaintiff's distress at the turn of events surrounding *Monsky I*. For example, she notes that in terms of her marketability as a paralegal, *Monsky I* caused her to become personna non grata in Danbury legal circles. She suggests that defendant's retaliation harmed her "in other ways". Monsky Affidavit at ¶¶ 33–34. She sets forth no facts suggestive of impairment of her prosecution of *Monsky I*.

**3.** Though not raised by counsel with specific reference to relevant authority, a question ought be considered whether this case should be controlled by the principle that where a constitutional right is violated, there is an entitlement to nominal damages even in the absence of actual compensable injury. See *Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d. Cir.1999). That case is distinguishable because the jury had found a violation of plaintiff's right to be free of excessive force as to one defendant and for the failure of a second defendant to intervene to avert use of excessive force. It is here found that there is no basis in the evidence in the record for a finding of a violation of plaintiff's rights because there was no basis to find that she was denied access to the courts nor prevented from a full presentation of her case in *Monsky I*. Thus the fact of defendant's conduct as alleged and his motivation being retaliatory, both assumed for this analysis, would not constitute the violation claimed in the absence of a resulting preclusion of access to the courts and/or compromise of her right to a full presentation of the claim in *Monsky I*. The cases cited in *Amato* are distinguishable also. See *Carey v. Piphus*, 435 U.S. 247, 253–67, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (where after a bench trial, the District Court denied recovery for want of proof of quantifiable injuries and damages. The Supreme Court held that if the constitutional right to due process was violated, there was a right to nominal damages); *Smith v. Coughlin*, 748 F.2d 783, 789 (2d Cir.1984) (where the Court of Appeals found a Sixth Amendment right violated, entitling plaintiff to nominal damages because "when a litigant fails to prove actual compensable injury, he is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right").

The 45–paragraph affidavit filed of William H. Honan, Atty. Burton's husband, states his background in seven and his personal beliefs in three. He refers to conduct of Judge Stodolink in five paragraphs, of Judge Sullivan (nowhere else claimed to be part of this case) in three, and the Connecticut Supreme Court in one. He refers in thirteen to improper conduct by defendant as a spectator at the trial of *Honan v. Dimyan* and in commiserating with Atty. Burton's opposing counsel and to Judge Stodolink's erroneous rulings as part of the conspiracy alleged. He asserts factual conclusions in eight paragraphs without substantiation. He recites no facts suggestive of a compromise of Ms. Monsky's claims in *Monsky I*.

Plaintiff complains of defendant as follows:

▮▮▮ a) Defendant's denial of plaintiff's accusations in *Monsky I* is consistent with his First Amendment rights. If not he would suffer the accusations without rejoinder in public. Plaintiff's personal anguish from defendant's acts, if retaliatory, cannot give rise to claims of constitutional dimensions. Her only constitutional claim, impairment of her prosecution of *Monsky I* as a denial of First Amendment access to the courts, is not evidenced in any manner. The suggestion at oral argument that presentation and protection of Ms. Monsky's interests and rights must have been compromised is not enough.

Though asked repeatedly, counsel failed to identify any respect in which such compromise, as a denial of access to the courts, occurred. No such claim was made to the Court of Appeals nor was any request made there to accommodate any such compromise nor to redress any such deficiency.[4]

b) Defendant orchestrated a letter writing campaign by court personnel to the Danbury newspaper reflecting negatively on *Monsky I*, Ms. Monsky and Atty. Burton. It is subject to the same dispositive observations as discussed in a) above. The denials by the authors of involvement by defendant in their letters is not countered by plaintiff with evidence supportive of the claim. Only by the most remote speculation could one infer that he was involved from his relationship to an author. The suggestion that he should have exercised supervision of the authors to prevent the letters assumes that he knew their intent in advance, of which there is no evidence. It further ignores their First Amendment rights.

c) Defendant's alleged enlistment of other comments in the news media fails, in addition to the analysis above, for lack of identification of any such author. The suggestion that lawyers would author such anticipating, unspecified "judicial favors" is the height of speculation. There is no basis for an inference that defendant held out such an inducement nor that there was

---

4. Though not raised by counsel, on inquiry by the court it was learned that the Petition for Certiorari to the Supreme Court in *Monsky I* was filed *pro se*. The Petition and the notice of denial are filed as exhibits to plaintiff's Notice of Compliance dated April 7, 1999. They strongly suggest a professionally drawn Petition with no suggestion of any problem posed to plaintiff in seeking Certiorari. Atty. Burton suggested that the *pro se* filing was necessary as she was not admitted to practice in the Supreme Court and could not seek admission with a pending grievance. To ascertain whether plaintiff's pursuit of *Monsky I* to its ultimate conclusion was affected, Atty. Burton was asked if she participated in the drafting of the petition. In reply, dated April 9, 1999, she invoked an attorney-client privilege for Ms. Monsky. The question did not require any quotation of a communication between attorney and client. If a communication was incorporated in the Petition, any privilege would be waived by the public disclosure by Ms. Monsky in filing same. If the form or substance of the Petition was influenced, without verbatim incorporation, by communication from Atty. Burton, the document would not constitute an attorney-client communication. In short no privilege is found to be invocable and the failure of an answer supports the inference that Atty. Burton did participate in drafting the Petition. It follows that no compromise was suffered by Ms. Monsky in filing the Petition from defendant's involvement in the grievance filed against Atty. Burton.

any author who did so on the basis of an implication or expectation of such.

d) The claim of defendant's conspiracy with other Superior Court judges fails. No judge's ruling in any case of plaintiff's was shown to have caused any loss of a full opportunity therein, or in *Monsky I*, to be heard. No ruling of any judge in any case of Atty. Burton's was shown to have impaired her functioning as counsel in *Monsky I*. Judge Mihalakos' refusal to transfer Atty. Burton's cases out of the Danbury District had no effect on *Monsky I*. The focus on the *Honan v. Dimyan* trial is also of no avail to plaintiff. No connection between that case and plaintiff, nor *Monsky I*, has been shown. All Atty. Burton's complaints about Judge Stodolink's conduct in that trial were waived if not raised on appeal or were resolved negatively if they were raised. She admits there was no favorable ruling as to such claims by the Connecticut Appeals Court. Though there was no prior claim, nor disclosure, of impropriety by Judge Radcliff, in oral argument Atty. Burton alluded to such. The clear lack of merit to such a claim is found in Judge Radcliff having been appointed to the Superior Court bench after *Monsky I* was argued to the Court of Appeals. No specific decision by him was cited as having any impact on Ms. Monsky. Similarly without merit is the allusion to Judge Axelrod's denying a claim for a jury trial and denying a continuance, both in cases unrelated to Ms. Monsky.

e) Defendant's attendance at the *Honan* trial, to which he was subpoenaed, is of no significance. The claim that his disruptive conduct, not found to be the case by the presiding judge, Judge Stodolink, distracted a witness, flies in the face of the fact that according to Atty. Burton, the witness, her father, made no complaint until after he left the stand. She makes no claim that she lost any anticipated testimony supportive of her case but only that he could have been a stronger witness absent the distraction. That is speculative. Ms. Monsky was not a party to that case and

as discussed, the occurrence caused no negative impact on *Monsky I*. Even more remote is the contention that defendant commiserated with Atty. Burton's opposing counsel in *Honan* during that trial. This conduct, cited by Atty. Burton as retaliatory by defendant, does not support a valid claim absent a negative effect on *Monsky I*.

f) The claimed harassment by the prosecutor, Mr. Flanagan, was not shown to have occurred other than during the *Honan* trial. It, and all the reasons discussed as to that trial, establishes neither a legal nor factual basis for the claim here.

g) The claim of an *ex parte* communication between defendant and Judge Goettel is not substantiated by any affirmative evidence. Reference by Judge Goettel to matters purportedly not in the record in *Monsky I*, does not support a claim that defendant necessarily spoke to Judge Goettel. Not only would such be rank speculation, the references are not significant to the dismissal of *Monsky I* at the trial level. Further, no issue in regard thereto was raised in the appeal to the Second Circuit. This case is not the forum to adjudicate issues properly raisable on direct appeal. Apart from the lack of factual support for the claim, it is also subject to the bar of res judicata. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

h) The only contention related to plaintiff from defendant's role in the grievance proceedings against Atty. Burton was that Ms. Monsky "worried" about losing her attorney. Atty. Burton had no authority for such being a sufficient basis for plaintiff's claim here. If such a claim is legally valid, then a grievance against any attorney, if unlawfully motivated, would give rise to a claim by every client of the attorney for a threat to the representation by that attorney. Further, communications incident and pertinent to judicial proceedings such as grievances are privileged. *Petyan v. Ellis*, 200 Conn. 243, 245–46, 510

A.2d 1337 (1986); *Sobocinski v. Statewide Grievance Committee*, 215 Conn. 517, 525, 576 A.2d 532 (1990); *Field v. Kearns*, 43 Conn.App. 265, 271, 273, 682 A.2d 148, *cert. den.*, 239 Conn. 942, 684 A.2d 711 (1996). *See* Conn.Code of Jud. Conduct, 3(b)(3). The claim is without merit.

i) The claim of impairment of Atty. Burton's oral argument in *Monsky I* at the Court of Appeals, for lack of specification, substantiation and causal connection, and for the reasons discussed above, is found to be lacking in merit.

j) The only substantiation offered for the Third Claim is in plaintiff's affidavit, that she suffered deep anguish from defendant's retaliation and its consequences. As discussed above, all the claims of retaliatory conduct are found wanting of any genuine issue of material fact. That alone would cause the failure of the claim that such conduct was also intended to cause emotional distress. The grant of the defendant's Motion for Summary Judgment as to the First, Second and Fourth Claims for Relief would leave the Third Claim alone. It would not be deemed appropriate to retain jurisdiction of only that claim under the criteria of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, on its face the record does not sustain the claim which requires proof that:

1) defendant intended to inflict emotional distress, or that he knew or should have known that emotional distress was a likely result of his conduct;

2) defendant's conduct was extreme and outrageous;

3) defendant's conduct was the cause of plaintiff's distress;

4) the emotional distress sustained by plaintiff was severe.

■ *Petyan v. Ellis*, 200 Conn. 243, 510 A.2d 1337 (1986). The conduct proven must be atrocious, exceeding "all bounds usually tolerated by decent society." *DeLaurentis v. City of New Haven*, 220 Conn. 225, 267, 597 A.2d 807 (1991), quoting *Petyan*, 200 Conn. at 254, n. 5, 510 A.2d 1337. "Mere insults, indignities or annoyances" are insufficient. *Taylor v. Phyllis Bodel Childcare Ctr.*, No. CV950377237, 1996 WL 434397, at *8 (Conn.Super., July 10, 1996); *Scandura v. Friendly Ice Cream Corp.*, No. CV930529109S, 1996 WL 409337, at *2 (Conn.Super. June 26, 1996). Whether in the first instance a *prima facie* case has been shown is for the court and only when "reasonable minds can differ does it become an issue for the jury." *Taylor*, 1996 WL 434397 at *8, (quoting *Mellaly v. Eastman Kodak Co.*, 42 Conn.Supp. 17, 18, 597 A.2d 846, 847 (1991)). *See Valencia v. St. Francis Hospital & Medical Ctr.*, No. CV940538867S, 1996 WL 218760 at *7 (Conn.Sup. April 3, 1996) (verbal abuse nonactionable); *Scandura*, 1996 WL 409337 at *5(crude criticism nonactionable). The record does not present evidence which would support a finding that defendant: 1) intended to inflict, or that he engaged in conduct which he knew or should have known was likely to cause, emotional distress; 2) engaged in extreme or outrageous conduct; 3) engaged in violative conduct which caused distress to plaintiff; or 4) acted so as to cause the severe distress essential to the cause of action. In the latter respect the only evidence was plaintiff's affidavit in which she asserts that she suffered "deep anguish" with no amplification to substantiate her claim. On the record the Third claim is dismissed.

## CONCLUSION:

Plaintiff has not shown the existence of a genuine issue of material fact as to any claim. Defendant and each person claimed to have acted at his instance or in concert with him denied the conduct plaintiff alleges. Defendant has thus contradicted all plaintiff's factual claims. Plaintiff has produced nothing but her speculations and those of her counsel and witnesses in support of her factual claims. It is found that there is no genuine issue of material fact

supportive of plaintiff's claims and that defendant is entitled to summary judgment as a matter of law as to all claims. Defendant's motion (doc. # 76) is **granted.** Accordingly judgment shall enter for defendant and the case is dismissed.

SO ORDERED.